# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **DOROTHY MICHELE HILBURT,** | ) |
| | ) |
|         **Plaintiff,** | ) |
| | ) |
| v. | )   Case No. CIV-16-298-RAW-SPS |
| | ) |
| **NANCY A. BERRYHILL,** | ) |
| **Acting Commissioner of the Social** | ) |
| **Security Administration,**[1] | ) |
| | ) |
|         **Defendant.** | ) |

## REPORT AND RECOMMENDATION

The claimant Dorothy Michele Hilburt requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the Commissioner's decision should be REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of

---

[1] On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Berryhill is substituted for Carolyn Colvin as the Defendant in this action.

such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he

---

[2] Step One requires the claimant to establish that she is not engaged in substantial gainful activity. Step Two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on November 28, 1965, and was fifty years old at the time of the most recent administrative hearing (Tr. 543). She completed the tenth grade while attending special education classes, and has worked as a school custodian and kitchen helper (Tr. 189, 419). The claimant alleges that she has been unable to work since an amended onset date of November 29, 2010, due to problems with her back and arthritis in her hands, as well as problems with reading and spelling (Tr. 188).

## Procedural History

On March 16, 2011, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her applications were denied. ALJ James Bentley held an administrative hearing and determined the claimant was not disabled in a written opinion dated July 26, 2013 (Tr. 16-36). The Appeals Council denied review, but on appeal and on motion from the Commissioner, this Court reversed in Case No. CIV-14-543-RAW-SPS and remanded with instructions to further clarify the issue of the claimant's literacy (Tr. 422-431). On remand, ALJ Keith Allred held a second administrative hearing and again determined the claimant was not disabled in a written opinion dated March 8, 2016 (Tr. 407-421). The

Appeals Council again denied review, so the ALJ's opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that the claimant had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567)(b) and 416.967(b), *i. e.*, she could lift/carry twenty pounds occasionally and ten pounds frequently, stand/walk and sit for six hours in an eight-hour workday with normal rest breaks. Additionally, he found that she could climb, balance, stoop, bend, squat, kneel, crouch, and crawl, as well as use both upper extremities occasionally for overhead reaching. Finally, he determined that she could perform the basic mental demands of competitive, remunerative, unskilled work, including the ability to understand, remember, and carry out simple instructions, respond appropriately to supervision, coworkers, and usual work situations; that she could deal with changes in a routine work setting; and that she was limited to no more than frequent contact with supervisors and coworkers (Tr. 416-417). The ALJ then found that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work that she was capable of performing, *i. e.*, packer, wire worker, and laundry folder (Tr. 420).

## Review

The claimant contends that the ALJ erred: (i) by improperly determining that the claimant did not satisfy the criteria of Listing 12.05B in the Medical-Vocational Guidelines, and (ii) by failing to properly account for her illiteracy. The undersigned

Magistrate Judge finds that the ALJ *did* fail to properly determine whether the claimant satisfied the criteria of Listing 12.05B, and the decision of the Commissioner should therefore be reversed.

The ALJ determined that the claimant had the severe impairments of mild mental retardation, social phobia, cervical degenerative disc disease, and chronic neck and back pain (Tr. 410). The record reflects that the claimant attended high school in Sacramento, California, until 1978 (Tr. 189). The claimant completed the tenth grade, and testified that she attended special education classes during this time (Tr. 189).

The evidence in the record reflects that the claimant underwent a psychological evaluation with Randy L. Crittenden, Ph.D., on August 1, 2011 (Tr. 248). As part of this exam, Dr. Crittenden conducted the WAIS-III, which provided IQ scores as follows: Verbal IQ of 55, Performance IQ of 70, and Full Scale Score of 58 (Tr. 250). Dr. Crittenden noted that the claimant indicated a statistically significant verbal weakness, had no concept of abstract thinking on similarities, and that she had relatively slow latency of response on several verbal and performance items (Tr. 250). He noted that the claimant appeared to have the satisfactory ability to understand, retain, and follow simple verbal instructions but that her capacity for more complex tasks was impaired; that her ability to sustain attention to perform simple and repetitive tasks was "minimally adequate"; and that her ability to reason and make occupational, personal, or social adjustments appeared impaired as a result of her level of intellectual functioning (Tr. 251). He assessed her with a learning disorder NOS, expressive language disorder, and generalized social phobia, and noted that she had a provisional diagnosis of mild

mental retardation because he was not provided any earlier medical evidence (Tr. 251). He found she had a guarded prognosis for any significant change of her intellectual functioning within the next year (Tr. 251). On September 13, 2011, Dr. Crittenden prepared a letter of clarification, in which he stated that the claimant appeared capable of reading simple materials that she had some past knowledge of, in a structured setting, such as name, date of birth, social security, and signature sections (Tr. 271). He further noted that her *overall ability to manage her affairs*, including shopping, paying bills, counting money, and reading a newspaper independently, was impaired (Tr. 271).

On August 20, 2011, Dr. Sally Varghese, M.D., reviewed the medical record and determined that the claimant met Listing 12.0B (Tr. 252, 256, 264). On reconsideration, Howard G. Atkins, Ph.D., believed that the claimant's "level of adaptive functioning" was not well established because she had a ten-year history of performing simple work (Tr. 268). Based on this questioning, Dr. Varghese then completed another assessment in which she found that the claimant did not meet a listing, and only had moderate degrees of limitation in the three areas of functional limitations, and no episodes of decompensation (Tr. 286). Noting that the claimant's former employer reported she could do simple tasks with minimal supervision, Dr. Varghese found the claimant could perform simple work (Tr. 288). She then completed an RFC assessment, finding the claimant markedly limited in the standard three areas, and concluding that she could perform simple tasks with routine supervision, could relate for work purposes and adapt to a work situation, and would be able to relate to the public in an incidental manner (Tr. 274).

In February 2012, Dr. Stephen Scott also reviewed the record and concluded that the claimant could understand, remember, and carry out simple instructions with routine supervision that did not require *extensive* reading or writing; she could relate to others on a superficial work basis; and she could adapt to a work environment (Tr. 298-300). In the PRTF assessment, Dr. Scott did not even discuss Dr. Crittenden's objective test scores, instead noting at the section for Listing 12.05 that the claimant had both a reading and writing disorder that did not precisely satisfy the listing (Tr. 306, 314). Opining that the claimant's intellectual functioning was not likely to decline between her thirties and her forties, he concluded that the claimant's "level of literacy and/or intellectual functioning does not significantly limit her ability to do the work she did previously" (Tr. 314).

Medical records reflect the claimant had also been diagnosed with cervical disk disease and had a positive systemic lupus erythematosus test (Tr. 352-355). Despite noting the valid medical evidence related to the claimant's degenerative disc disease and arthritis, reviewing physician Sean Neely, D.O., found on October 12, 2011, that the claimant could perform the full range of light work (Tr. 291-297).

Although the claimant bears the burden of proof at step three to establish that she meets or equals the requirements for a listed impairment, *see Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005), the ALJ's responsibilities at step three of the sequential analysis require him to determine "whether the claimant's impairment is equivalent to one of a number of listed impairments that . . . [are] so severe as to preclude substantial gainful activity." *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) [quotation omitted]. *Clifton* requires the ALJ to discuss the evidence and explain why

claimant was not disabled at step three. *Id*. at 1009, *citing Cook v. Heckler*, 783 F.2d 1168, 1172-73 (4th Cir. 1986).

In this case, the ALJ at step three noted the differences in opinion between Dr. Varghese's initial reviewing opinion and Dr. Atkins' (without acknowledging Dr. Crittenden's exam results) and concluded that the claimant did not meet a listing "because I have no evidence of adaptive functioning impairment prior to the age of 22, and tend to agree that the weight of the opinions that lead me to conclude that the claimant does not meet this listing," further asserting that the claimant waived the argument that she met this listing (Tr. 414). He then found that Dr. Crittenden's IQ assessment was not valid, concluding that the claimant's IQ score was inconsistent with the minimally adequate ability to understand, retain, and follow very simple and repetitive tasks demonstrated by her previous work history, and because the state reviewing physicians believed more information was needed to assess the claimant's level of intellectual functioning (Tr. 416). He reached the same conclusions with regard to Listing 12.05C. No further evidence on this subject was obtained.

The undersigned Magistrate Judge finds that the ALJ's conclusions related to Listing 12.05B are wholly unsupported by both the record and his own findings at steps two and four. In order to satisfy section 12.05B under the category of "Intellectual Disorder," the claimant must first satisfy the diagnostic description included in the introductory paragraph which requires that the claimant possess "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i. e.*, the evidence demonstrates or supports onset of the

impairment before age 22." 20 C.F.R. pt. 404, subpt. P, app. 1, Listing 12.05. This initial requirement is referred to as the "capsule definition." *Peck v. Barnhart*, 214 Fed. Appx. 730, 736 (10th Cir. 2006) [unpublished opinion]. At the time of the ALJ's opinion, Listing 12.05B required, in addition to satisfying the capsule definition, "a valid verbal, performance, or full scale IQ of 59 or less." 20 C.F.R. pt. 404, subpt. P, app. 1, Listing 12.05B (Effective August 12, 2015 to May 23, 2016). As for Listing 12.05C, the claimant must satisfy, in addition to the capsule definition, two additional prongs: "a valid verbal, performance, or full scale IQ of 60 through 70 *and* a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]" 20 C.F.R. pt. 404, subpt. P, app. 1 [emphasis added]. As stated above, the *claimant* "must provide specific medical findings that support each of the various requisite criteria for the impairment." *Lax v. Astrue*, 489 F.3d 1080, 1085 (10th Cir. 2007), *citing* 20 C.F.R. §§ 404.1525, 416.925 (2006).

As to the capsule definition applicable to the entirety of Listing 12.05, the ALJ did make a finding that the claimant failed to meet the capsule definition because: (1) he had no evidence of adaptive functioning impairment prior to the claimant being 22, and (2) he agreed with the state reviewing physicians who believed she did not meet this listing. Additionally, he pointed out that the claimant's representative at the administrative level agreed that there were no records for the claimant prior to her attaining the age of 22, and argued that she would nevertheless be found disabled under the Grids. However, the ALJ did not challenge the claimant's uncontradicted report that she attended special education classes through the tenth grade, nor did he acknowledge that the claimant's IQ scores

were some evidence of such an intellectual disability prior to the age of 22. Moreover, "a claimant 'is not required to affirmatively prove that [s]he was mentally retarded prior to reaching the age of twenty two so long as there was no evidence that the claimant's IQ had changed.'" *Johnson v. Colvin*, 2016 WL 7176655, at *5-6 (W.D. Okla. Dec. 8, 2016), *quoting McKown v. Shalala*, 5 F.3d 546, 1993 WL 335788 at *3 (10th Cir. Aug. 26, 1993) (unpublished table opinion). The ALJ's conclusory reliance on Plaintiff's education and work history does not change this result. The SSA has not adopted a standard to measure what constitutes 'deficits of adaptive functioning' under the capsule definition of Listing 12.05. Instead, the SSA allows use of the measurement methods authorized by four major professional organizations dealing with mental retardation. . . . The ALJ's decision, however, is silent with respect to what method he used to measure Plaintiff's deficits of adaptive functioning." *Johnson v. Colvin*, 2016 WL 7176655, at *6, *citing Barnes v. Barnhart*, 116 Fed. Appx. 934, 942 (10th Cir. 2004). The undersigned Magistrate Judge thus finds that the ALJ ignored evidence to support the likelihood the claimant had deficits in adaptive functioning prior to age 22. *See Johnson v. Colvin*, 2016 WL 7176655, at *7 ("Significantly, the ALJ failed to explain why Plaintiff's completion of the tenth grade, in light of the additional evidence that she was recommended for special education classes and could not complete her GED, supports a finding that she did not have the requisite deficits in adaptive functioning to support the Listing 12.05(C) criteria."). Moreover, "[t]he fact that an individual is able to work, and has attended schooling beyond high school has been held in several cases not to be

inconsistent with mild mental retardation." *Muntzert v. Astrue*, 502 F. Supp. 2d 1148, 1158 (D. Kan. 2007) (collecting cases).

Next, the undersigned Magistrate Judge addresses the requirement under Listing 12.05B that the claimant have "a valid verbal, performance, or full scale IQ of 59 or less," 20 C.F.R. pt. 404, subpt. P, app. 1, Listing 12.05B (Effective August 12, 2015 to May 23, 2016). "In cases where more than one IQ is customarily derived from the test administered, *e. g.*, where verbal, performance, and full scale IQs are provided in the Wechsler series, we use the lowest of these in conjunction with 12.05." 20 C.F.R. pt. 404, subpt. P, app. 1, Listing 12.00D(6)(c). Although "the ALJ may discount an IQ score as invalid for a variety of reasons, so long as there is substantial evidence in the record to support his conclusion[,]" in this case, "however, the educational background and the life activities cited by the ALJ . . . are not sufficient to contradict her otherwise uncontroverted opinion of the validity of the scores obtained." *McKown*, 1993 WL 335788, at *3. Accordingly, it appears that the ALJ ignored strong evidence that the claimant meets the criteria for Listing 12.05B.

Likewise, in addition to the required IQ score between 60 and 70, the second prong of Listing 12.05C requires the claimant to have a "physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.05C. The Tenth Circuit has adopted the view of the First and Eleventh Circuits that a "§ 12.05C limitation is significant if the claimant suffers from a severe physical or other mental impairment, as defined at step two of the disability analysis, apart from the decreased intellectual function." *Hinkle*, 132

F.3d at 1352. ("We conclude the analysis employed by the First and Eleventh Circuits is the better interpretation of what must be shown to satisfy the second prong of § 12.05C."), *citing Edwards v. Heckler*, 736 F.2d 625, 629-631 (11th Cir. 1984) and *Nieves v. Secretary of Health & Human Services*, 775 F.2d 12, 14 & n.7 (1st Cir. 1985). "[W]hether a claimant has a § 12.05C 'significant limitation' should 'closely parallel' the step two standard, and is to be made without consideration of whether the claimant can perform any gainful activity beyond the analysis as made at step two." *Hinkle*, 132 F.3d at 1352-1353, *citing Fanning v. Bowen*, 827 F.2d 631, 634 (9th Cir. 1987) (if claimant meets the § 12.05C listing and the durational requirement, "he must be found disabled without consideration of his age, education, and work experience[.]") [internal citations omitted]. Here, the ALJ determined that, in addition to mild mental retardation, the claimant had the severe impairments of social phobia, cervical degenerative disc disease, and chronic neck and back pain (Tr. 410). This was sufficient to satisfy the second prong of Listing 12.05C. *See Peck*, 214 Fed. Appx. at 734 ("Based on the ALJ's findings [that the claimant had severe impairments that combined to significantly limit her ability to perform basic work-related functions *and* was unable to perform her past relevant work], Peck meets the additional significant impairment requirement under Listing 12.05C."), *citing Hinkle*, 132 F.3d at 1352-1353 & n.4. But even if the ALJ did not find that the claimant had an additional and significant work-related limitation of function, the ALJ's conclusion that the claimant could not perform her past relevant work (Tr. 17) meets the second prong of Listing 12.05C. See *Hinkle*, 132 F.3d at 1353 n.4 ("Needless to say, a claimant's inability to perform his past relevant work would meet the second prong of

§12.05C."). *See also Peck v. Barnhart*, 214 Fed. Appx. 730, 734 (10th Cir. 2006) ("Based on the ALJ's findings [that the claimant had severe impairments that combined to significantly limit her ability to perform basic work-related functions *and* was unable to perform her past relevant work], Peck meets the additional significant impairment requirement under Listing 12.05C."), *citing Hinkle*, 132 F.3d at 1352-1353 & n.4. Thus, contrary to the ALJ's conclusion regarding Listing 12.05C, the claimant *did* provide evidence that her impairment existed before the age of 22, *and* that she had IQ scores ranging from 55 to 70, *as well as* a "physical or other mental impairment imposing an additional and significant work-related limitation," either by her additional severe impairments, *or* by her inability to perform her past relevant work.

It appears from a review of the entire record that, rather than properly evaluating the evidence, the ALJ chose to adhere to findings at each step that would allow him to avoid a finding of disability. The evidence regarding such findings for step three are listed above. Moreover, at the administrative hearing, ALJ Allred noted that the claimant had previously been found capable of sedentary work, and that under the Grids, she would be disabled on her fiftieth birthday and if she were also found to be illiterate, she would be disabled under the Grids at age forty-five (Tr. 574). However, despite the claimant's documented degenerative disc disease and previous finding of sedentary work, ALJ Allred concluded that the claimant nevertheless could perform light work, ignoring the record evidence of documented reduced range of motion and instead finding there was no "significant" decreased range of motion of the spine (Tr. 235-237, 416-418). This indicates a deliberate attempt to pick and choose among the evidence to use only

favorable portions in support of the ALJ's opinion. *See Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984) ("Th[e] report is uncontradicted and the Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper.") [citations omitted]. Accordingly, the ALJ's findings are not supported by substantial evidence, and the decision of the Commissioner should be REVERSED and the case REMANDED to the ALJ for further analysis as outlined above.

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The undersigned Magistrate Judge thus RECOMMENDS that the Court reverse the decision of the Commissioner and remand the case for further proceedings. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 22nd day of August, 2017.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**